**IN THE UNITED STATES DISTRICT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | | |
|---|---|---|
| **JOE HAND PROMOTIONS, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **3:11-cv-90 (CAR)** |
| | : | |
| **ADJ ENTITY, LLC d/b/a TOP DAWG and JUDITH E. HARVEY,** | : | |
| | : | |
| **Defendants.** | : | |

***ORDER ON MOTION FOR DEFAULT JUDGMENT***

Currently before the Court is Plaintiff's Motion for Default Judgment [Doc. 8] against Defendant ADJ Entity, LLC d/b/a Top Dawg ("Top Dawg") seeking statutory damages for Top Dawg's broadcast of a boxing match without Plaintiff's authorization, in violation of the Communications Act of 1934, 47 U.S.C. § 605, and the Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553. Top Dawg was served with the summons and copy of the Complaint but never filed a responsive pleading. Plaintiff then filed a Motion for Entry of Default [Doc. 7], which was entered by the Clerk on August 8, 2011. On August 17, 2011, Plaintiff filed the current Motion. Having fully considered Plaintiff's Motion, the filed Complaint, the

submitted evidence, and the relevant case law, the Court **GRANTS** Plaintiff's Motion. Accordingly, default judgment should be entered in favor of **PLAINTIFF** and against Top Dawg, and appropriate relief is due to be awarded as discussed below. See Fed. R. Civ. P. 55(b).

**FACTS**

According to the facts alleged in the Complaint, Plaintiff was granted the exclusive nationwide television distributing rights to the *Ultimate Fighting Championship 100: "Making History"* telecast which broadcast on July 11, 2009, via closed-circuit television (the Program). Plaintiff, in turn, entered into sublicensing agreements with various commercial entities throughout North America, including Georgia, whereby those entities were allowed to publicly exhibit the Program to their patrons.

In an attempt to combat piracy of its broadcast, Plaintiff hired an investigative agency, which retained auditors to visit various bars and restaurants on the night the Program aired, to see whether the establishments were intercepting and publicly displaying the Program without authorization from Plaintiff. One such auditor visited Top Dawg the night the Program was broadcast and witnessed the broadcast of the Program. According to the auditor's affidavit, Top Dawg charged an admittance fee of $5.00 to enter the establishment. The auditor verified that the maximum occupancy for

the bar was 193 people and counted the number of patrons three different times to be 100, 140, and 182. She noted that the Program was televised on three 50-inch flat screen televisions located above the bar. The auditor also observed a cameraman filming the crowd inside the bar before and during the fight between Brock Lesnar and Frank Mar. There was an announcer/DJ for the bar that was getting the crowd "pumped" for the fight. She noted that at one point during the broadcast, patrons were upset and screaming obscenities because the televisions lost feed during the last part of the St. Pierre vs. Alves fight.

Plaintiff contends that Top Dawg did not contract or pay the necessary sublicense fee required to obtain the Program, and thus it had no authority to broadcast the fight. Plaintiff contends that its programs cannot be mistakenly or innocently intercepted and that Top Dawg's broadcast of the Program could only have been accomplished through willful and deliberate means. Specifically, Plaintiff claims that Defendant unlawfully intercepted, received, and exhibited the Program within its establishment for commercial advantage and private financial gain.

On July 6, 2011, Plaintiff filed its Complaint alleging two counts: (1) unauthorized reception and publication of satellite transmission in violation of 47 U.S.C. § 605, and (2) unauthorized reception and publication of cable service in

violation of 47 U.S.C. § 553. On July 18, 2011 Plaintiff served Defendants with the Complaint. As of the date of this Order, Defendants have not answered or otherwise acknowledged the pendency of this suit. Plaintiff received an entry of default on August 8, 2011, and on August 17, 2011, Plaintiff filed the present Motion for Default Judgment [Doc. 8].

## DISCUSSION

### A. Default Judgment Standard

Prior to obtaining a default judgment, the party seeking judgment must first seek an entry of default. See Fed. R. Civ. P. 55(a). Plaintiff has satisfied this requirement. After entry of default, Plaintiff is required to seek default judgment from the Court. Fed. R. Civ. P. 55(b)(2) ("[T]he party entitled to a judgment by default shall apply to the court therefor.").

The mere entry of default by the Clerk does not in itself warrant the entry of default judgment by the Court. See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). Rather, the Court, in its discretion, must find that there is a "sufficient basis in the pleadings for the judgment to be entered." Id. The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. Id. The clerk's entry of default causes all well-pleaded allegations of facts to be

deemed admitted. See Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987). The Court must accept these facts as true and determine whether they state a claim upon which relief may be granted. See Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1370, n.41 (11th Cir. 1987) (citing Nishimatsu, 515 F.2d at 1206). The Court must consider whether the unchallenged facts constitute a legitimate cause of action, since the party in default does not admit a mere conclusion of law. In considering any default judgment, the Court must examine (1) jurisdiction, (2) liability, and (3) damages. See Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353 (S.D. Ga. 2004). This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). The remaining considerations, liability and damages, are discussed below.

**B. Liability under 47 U.S.C. §§ 605 and 553**

To establish a violation of Section 605 or Section 553, Plaintiff must establish that (1) Defendant intercepted the Program, (2) Defendant did not pay for the right to receive the transmission, and (3) Defendant displayed the Program to patrons of their commercial establishment. See, e.g., J&J Sports Prod., Inc. v. Just Fam, LLC, 2010 WL 2640078, *2 (N.D. Ga. June 28, 2010).

The Complaint, together with the affidavits of the auditor, Joe Hand, Jr. (president of Plaintiff), and Plaintiff's counsel establish Defendant's liability. The

affidavits establish the following: Plaintiff owns the distribution rights to the Program. Commercial establishments could lawfully show the Program to their patrons if contractually authorized by Plaintiff. In order to lawfully broadcast and publicly exhibit the Program on June 11, 2009, to Top Dawg patrons, Defendant was required to obtain the proper license from and pay the required fee to Plaintiff. Defendant did not do so. Instead, as confirmed by the auditor hired by Plaintiff, Defendant unlawfully obtained the Program broadcast and publicly exhibited it over three television sets to 182 patrons. Top Dawg also charged a $5.00 cover fee to enter the bar that evening. The auditor also noted that the televisions displayed the satellite cable company image on them. By virtue of its default, Top Dawg has admitted it exhibited the Program, without authorization, to their patrons. Thus, Plaintiff has sufficiently pleaded its case so as to establish Defendant's liability under both Sections 605 and 553.

**C. Damages**

Statutory Damages

The Court may only award damages for default judgment without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculations." Adolph Coors Co. v. Movement Against Racism and the Klan, 777 F.2d 1538, 1543 (11th Cir. 1985). Under such circumstances, the record must "adequately reflect[] the basis

for award via . . . demonstration by detailed affidavits establishing the necessary facts." Id. at 1544; see also Taylor v. Wachovia Mortg. Corp., No. 1:07-CV-2671-TWT, 2009 WL 249353, at *11 (N.D. Ga. Jan. 30, 2009) (No evidentiary hearing is required "where an adequate record has been made via affidavits and documentary evidence to show statutory damages.") (internal quotation marks omitted). The decision of whether to hold a hearing rests in the district court's discretion. DIRECTV, Inc. v. Huynh, 318 F. Supp. 2d 1122, 1129 (M.D. Ala. 1994). In this case, Plaintiff has not requested a hearing and has moved only for statutory, and not actual, damages. Thus, the Court finds that a hearing is not necessary because an adequate record has been made to calculate damages.

Because Plaintiff transmitted the Program by both cable and satellite systems, and it was unable to discern which way (i.e., using an illegal satellite receiver or using one of several cable piracy techniques) Defendants intercepted the Program, Plaintiff seeks relief under both 47 U.S.C. § 605,[1] for interceptions via satellite transmissions, and

[1] 47 U.S.C. § 695(a) provides that: "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." Satellite signals are considered "radio communications." United States v. Howard, 13 F.3d 1500, 1501 (11th Cir. 1994).

47 U.S.C. § 553,[2] for interceptions by way of cable systems.[3] Plaintiff explains that because Defendants did not participate in discovery, it has been unable to determine which particular method Top Dawg employed in order to intercept the Program. "In this circumstance, the Court elects to give Plaintiff the benefit of the doubt and not fault it for failing to plead the particular manner of interception since this may be exclusively in Defendants' knowledge." Joe Hand Promotions, Inc. v. McBroom, 2009 WL5031580, *3 (M.D. Ga. 2009) (internal quotations and citation omitted).

Upon finding a violation of the statutes, a plaintiff may elect between actual or statutory damages. Kingvision Pay-Per-View Corp., Ltd. v. El Torito Supermarket, Inc., No. 6:06-cv-657-Orl-18KRS, 2007 WL 174158, at *3 (M.D. Fla. June 19, 2007). Here, Plaintiff elects to receive statutory damages and moves the Court to award the

---

[2] 47 U.S.C. § 553(a)(1) prohibits "intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."

[3] The Court notes that there is a split in the Circuits as to what activity each section covers and how to reconcile potential overlap in the provisions. Some circuits have held that § 605 applies to both satellite transmissions and cable programming transmitted over a cable network. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123 (2nd Cir. 1996) (holding that both § 605 and § 553 covers cable programming transmitted over a cable network). Other circuits have held that only § 553 covers cable programming transmitted over a cable network. See TRK Cable Co. v. Cable City Corp., 267 F.3d 196 (3d Cir. 2001); United States v. Norris, 88 F.3d 462, 466 (7th Cir. 1996). The Eleventh Circuit has not addressed this issue. This Court, like the majority of its sister courts in this circuit, is persuaded by the Third and Seventh Circuits' interpretation of § 605's plain language that § 605 prohibits commercial establishments from intercepting and broadcasting satellite programming, while § 553 addresses interceptions that occur through a cable network. See, e.g., J&J Sports Prod., Inc. v. Allen, 2011 WL 941502, *2 (N.D. Ga. 2011); CSC Holdings, Inc. v. Kimtron, Inc., 47 F. Supp. 2d 1361 (S.D. Fla. 1999).

maximum amount of statutory damages against Defendants of up to $110,000, plus attorney's fees and costs. Both § 605 and § 553 authorize the Court to award statutory damages, reasonable attorney's fees and costs, and, if Plaintiff shows that Defendants' violation was willful, enhanced damages.

Under § 605, a court may award statutory damages between $1,000 and $10,000 for each violation, 47 U.S.C. § 605(e)(3)(c)(i)(II), and if a violation is "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," a court may award up to an additional $100,000, id. at § 605(e)(3)(C)(ii). Under § 553, a court may grant statutory damages between $250 and $10,000 per violation, id. at § 553(c)(3)(A)(ii), and up to $50,000 may be awarded if the court finds that the act was violated "willfully and for purposes of commercial advantage or private financial gain," id. at § 553(c)(3)(B). In addition to damages, both § 605 and § 553 provide that a court shall award the plaintiff full costs of bringing an action including reasonable attorneys' fees. Id. at § 605(e)(3)(B)(iii), § 553(c)(2)(C).

Although the facts established by the default are sufficient to show liability under both § 503 and § 605, Plaintiff may only recover under one statute. See, e.g., J&J Sports Prod., Inc. v Allen, 2011 WL 941502 *2 (N.D. Ga. Mar. 14, 2011); Joe Hand Promotions, Inc. v. McBroom, 2009 WL 5031580, *2 (M.D. Ga. 2009); J&J Sports Prod.,

Inc. v. Fitzgerald, 2009 WL 3681834, *2 n. 1 (N.D. Ga. 2009).

In this case, however, the Court need not determine which statute Plaintiff is recovering under. The difference in the authorized range of statutory damages permitted by § 605 and § 553 is immaterial because the Court declines to award the minimum or maximum amount of statutory damages under either section. District courts have "considerable discretion in determining the appropriate amount of damages." Id. at *4; see Cable/Home, 902 F.2d at 852 (holding that district courts have "wide latitude" in determining statutory damages).

The Eleventh Circuit has not addressed a uniform formula for calculating statutory damages under either § 605 or § 553. Some courts award damages as a flat sum. See, e.g., Joe Hand Prods., Inc. v. Leon, No. 1:06-CV-1180-JOF, 2007 WL 4097412, at *2 (N.D. Ga. Oct. 31, 2007) (awarding $3,000 in statutory damages); Trawick, 359 F. Supp. 2d at 1208 (awarding $1,000); Huynh, 318 F. Supp. 2d at 1132 (awarding $1,000). Other courts award the plaintiff the license fee the defendant, based on its maximum capacity, would have paid if it had legally purchased the event for exhibition. See, e.g., J&J Sports Prod., Inc. v. Arboleda, 2009 WL 3490859, *7 (M.D. Fla. 2009) (calculating statutory damages as the equivalent of the license fee based on the maximum capacity of restaurant); El Torito, 2007 WL 1794158, at *4 (same); J&J Sports Prods., Inc. v.

Benson, No. 06-CV-1119, 2007 WL 951872, at *5 (E.D.N.Y. Mar. 27, 2007) (same).

This Court finds the latter approach to be sound and reasonable and will award statutory damages in an amount equal to the license fee Defendants would have paid if it had legally purchased the right to exhibit the Program. Plaintiff submitted a "rate card" detailing the fee for establishments like Top Dawg, based on maximum capacity, to broadcast such programs. (Exhibit A). In this case, Top Dawg's maximum capacity is 193 patrons. Thus, based on the rate card submitted by Plaintiff, Plaintiff would have charged $1,500 for Top Dawg to broadcast the Program. Therefore, the Court awards Plaintiff statutory damages in the amount of $1,500.

Enhanced Damages

Plaintiff also seeks up to an additional $100,000 in enhanced damages. Under the statute, enhanced damages may be awarded when the violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). "Willfulness is defined as 'disregard for the governing statute and an indifference for its requirements.'" J&J Sports Prods., Inc. v. Guzman, 553 F. Supp. 2d 195, 199 (E.D.N.Y. 2008 (quoting Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985)). Courts have found that willfulness under section 605 is "established by the fact that an event is broadcast without authorization." Id.; see

Leon, 2007 WL 4097412, at *2 (holding that defendants' conduct of broadcasting encrypted program without authorization established willfulness); J&J Sports Prods., Inc. v. Kosoria, No. 06-CV-2102 KMK, 2007 WL 1599168, at *3 (S.D.N.Y. June 1, 2007) (holding an encrypted satellite program "cannot be intercepted without engaging in a willful act"); Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 490-91 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously."). In Entm't by J&J, Inc. v. Al-Waha Enters., Inc., the district court held:

> Based on the limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance, however, courts have held conduct such as that of [defendant] in this case to be willful and for the purposes of direct or indirect commercial advantage or private financial gain.

219 F. Supp. 2d 769, 776 (S.D. Tex. 2002).

Here, the Court finds Defendants willfully violated the statutes. It is difficult for this Court to see how Defendants could have accidentally intercepted and exhibited the encrypted Program; the signal had to be unscrambled by some deliberate act. See Arboleda, 2009 WL 3490859, at *5 ("By virtue of default, the Defendants have admitted

to exhibiting the Program in the Restaurant, a commercial establishment, willfully and for financial gain."). Therefore, the Court finds that Defendants' broadcast of the Program without Plaintiff's authorization is enough to show a willful violation committed for the purpose of direct or indirect financial gain.

Having found that Defendant's violation of the statutes was willful, the Court must now decide the amount of enhanced damages to award Plaintiff. In determining the amount of enhanced damages, courts consider several factors: "(1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge." J&J Sports Prods., Inc. v. Tu, No. 08 C 4119, 2008 WL 4833116, at *2 (N.D. Ill. Oct. 29, 2008). In connection with the above factors, "courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)." Id. Therefore, courts typically force the defendant to pay some multiple of the license fee. Arboleda, 2009 WL 3490859, at *7. For first-known violations of the statutes, courts in our circuit have awarded enhanced damages of three times what it would have cost Defendants to lawfully exhibit the Program. See, e.g., McBroom, 2009 WL 5031580 at *4;

Arboleda, 2009 WL 3490859 at *7; and Kingvision Pay-Per-View Corp., LTD. v. Wright, No. 8:06-cv-892-T-30MAP, 2006 WL 4756450 (M.D. Fla. Oct. 27, 2006).

While not bound by it, the Court finds this latter approach persuasive. Although Top Dawg did charge a modest fee to enter the establishment, there is no evidence that Top Dawg had repeated violations of the statutes, advertised the Program, or reaped great monetary gain from the misconduct. Thus, the Court will award enhanced damages amounting to three times the statutory damages of $1,500, which equals $4,500. Such an amount reflects the seriousness of Defendants' conduct, affords Plaintiff sufficient recovery based on the evidence submitted, and should provide a deterrent to future violations.

*3. Attorney's Fees and Costs*

Plaintiff is also entitled to its attorneys' fees and costs incurred. Plaintiff must submit its application for attorneys' fee and costs within fourteen (14) days of the date of this Order.

**CONCLUSION**

For the foregoing reasons, the Court **HEREBY GRANTS** Plaintiff's Motion for Default Judgment [Doc. 8]. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff and against Defendant Top Dawg for a total statutory damages award

of $6,000. **IT IS FURTHER ORDERED** that Plaintiff must submit its application for attorneys' fees and costs within fourteen (14) days of the date of this Order.

**SO ORDERED**, this 14th day of September, 2011.

S/ C. Ashley Royal
C. ASHLEY ROYAL,
UNITED STATES DISTRICT JUDGE

SSH/lmh